UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA ~~291~~
District Court File Numbers 18-150 (DWF/HB) and 18-~~313~~ (DWF/~~HB~~) (D. Minn.)
District Court File No. 18-cr-20014 (C.D. Illinois)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | **PLEA AGREEMENT AND** |
| Plaintiff, ) | **SENTENCING STIPULATIONS** |
| ) | |
| v. ) | |
| ) | |
| JOE MORRIS, ) | |
| ) | |
| Defendant. ) | |

The United States of America, by and through its attorneys: Erica H. MacDonald, United States Attorney for the District of Minnesota, and Assistant United States Attorneys John Docherty and Julie E. Allyn; John C. Milhiser, United States Attorney for the Central District of Illinois and Assistant United States Attorney Eugene Miller; Assistant Attorney General for Civil Rights Eric S. Dreiband and Trial Attorney Timothy Visser; and the defendant, Joe Morris, through his attorney, Robert Richman, Esq.; have agreed to resolve this case on the terms and conditions set forth below. This plea agreement binds only the defendant, the United States Attorney's Offices for the District of Minnesota and the Central District of Illinois, and the Civil Rights Division of the United States Department of Justice. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges.** Defendant agrees to plead guilty to Counts 1, 2, and 3 of the Superseding Indictment filed in the United States District Court for the Central District of Illinois on May 2, 2018 (the "Illinois Indictment"), and to Counts 2 and 4 of the Indictment

1

SCANNED
JAN 24 2019
KOS
U.S. DISTRICT COURT ST. PAUL

filed in the United States District Court for the District of Minnesota on June 20, 2018 (the "Minnesota Indictment"). The Illinois Indictment has been transferred to Minnesota for entry of guilty pleas and sentencing pursuant to Federal Rule of Criminal Procedure 20.

In Counts 1, 2, and 3 of the Illinois Indictment, defendant Morris is charged with:

- Count 1, Possession, between in or around October of 2017, to on or about February 27, 2018, in the Central District of Illinois, of a Machine Gun, in violation of Title 18, United States Code, Sections 922(o) and 924(a)(2);

- Count 2, Conspiracy to Interfere with Commerce by Threats and Violence, from on or about August of 2017 to at least March 10, 2018, in Ford County, in the Central District of Illinois, and elsewhere, in violation of Title 18, United States Code, Sections 1951 and 2. In this Count, Defendant is alleged to have conspired with Michael Hari, Michael McWhorter, and Ellis "E.J." Mack, as well as others known and unknown to the grand jury. Alleged co-conspirators Hari and McWhorter are also charged in the Minnesota Indictment, while alleged co-conspirator Mack is not; and

- Count 3, Attempted Arson, on or about November 7, 2017, in Champaign County, in the Central District of Illinois, in violation of Title 18, United States Code, Sections 844(i) and 2.

In Counts 2 and 4 of the Minnesota Indictment, Defendant is charged with:

- Count 2, Intentionally Obstructing and Attempting to Obstruct, by Force and the Threat of Force, and by means of fire and explosives, the Free Exercise of Religious Beliefs, on or about August 5, 2017 in the State and District of

    Minnesota, in violation of Title 18, United States Code, Sections 247(a)(2) and 2; and

- Count 4, Carrying and Using a Destructive Device During and in Relation to a Crime of Violence, also on or about August 5, 2017, in the State and District of Minnesota, in violation of Title 18, United States Code, Sections 924(c)(1)(B) and 2.

At the time of sentencing, the government will move the Court to dismiss the remaining counts of the Minnesota Indictment as to this Defendant.

**Factual Basis.**

The following facts are a sufficient basis for the pleas of guilty being entered. The parties do not claim that this plea agreement and sentencing stipulations contains all the facts of this case.

During the summer of 2017, co-defendant and co-conspirator Michael Hari started a militia group in central Illinois. Hari called the group "Patriot Freedom Fighters," although the name was changed, after the bombing of the Dar al-Farooq Islamic Center, to "White Rabbits." By late July and early August of 2017, the members of the militia group included Hari; Defendant, Joe Morris; Michael McWhorter; and at least five other people.

Defendant concedes that the government has evidence that is sufficient to prove beyond a reasonable doubt that on a date that is not known precisely, but was sometime during the two weeks immediately preceding August 4, 2017, two of Defendant's co-conspirators, Hari and McWhorter, drove from central Illinois across the state line and into Indiana, where they purchased approximately twenty pounds of black powder at a small

gun shop. On August 4 and 5, 2017, Defendant, together with Hari and McWhorter, drove from central Illinois to Bloomington, Minnesota. In order to avoid apprehension by law enforcement, the defendants drove a rented truck, avoided toll roads (because they believed cameras at toll plazas could record license plate numbers), and Defendant and McWhorter, at the direction of Hari, left their mobile phones behind in Illinois. At a gas station on the way from Illinois to Minnesota, approximately one hour before entering Minnesota, Hari filled an empty plastic container with a mixture of gasoline and diesel fuel. Inside the cab of the rented truck was a pipe bomb, built by Hari by packing some of the black powder bought at the Indiana gun shop into a segment of PVC pipe. The PVC pipe segment was capped at both ends, and a fuse was threaded through a hole that had been drilled in one cap. That fuse extended from the outside of the pipe bomb to the black powder within the bomb. At about the same time that the gasoline and diesel fuel mixture was put into the empty plastic container, Hari informed Defendant and McWhorter that there was a pipe bomb in the vehicle and that they were going to bomb a mosque.

The three conspirators arrived at the Dar al-Farooq Islamic Center in Bloomington, in the State and District of Minnesota, at approximately five in the morning on August 5, 2017. Co-conspirator Hari parked the rented truck in the mosque's parking lot. Defendant and McWhorter left the truck and approached the mosque. Hari gave Defendant a sledgehammer and told him to use it to break a window, which he did. Coconspirator McWhorter then lit the fuse on the bomb and threw the bomb through the window that Defendant had broken. Defendant threw the container holding the gasoline/diesel fuel mixture through the same window, as he had been told to do. McWhorter and Defendant

then ran back to the rented truck and got in. Once they were inside the truck, Hari drove out of the mosque's parking lot at high speed. The three conspirators then drove back to Illinois.

Defendant concedes that the government has evidence sufficient to prove beyond a reasonable doubt that the pipe bomb exploded inside the imam's office of the Dar al-Farooq Islamic Center; the explosion caused extensive blast damage to the office; the explosion also ignited the gasoline and diesel fuel mixture, which started a fire; the building's sprinkler system activated, and the fire was promptly extinguished; the fire and sprinklers caused fire and water damage within the Dar al-Farooq Islamic Center; at the time of the explosion, the mosque was occupied, as morning prayers had been just about to start; the imam's office was unoccupied; and the bombing caused no fatalities or injuries.

The Dar al-Farooq Islamic Center was targeted because it is an Islamic house of worship. By bombing a mosque, the three defendants intended to interfere with the free exercise of religious belief by Muslims. The defendants further intended by this bombing to communicate to Muslims that they were not welcome in the United States, and should leave the country. In addition, Defendant believed, because Hari told him, that the Dar al-Farooq Islamic Center was targeted, rather than a different mosque, because (1) it was far enough away from central Illinois that the three conspirators thought it unlikely they would be suspected in the bombing; and (2) it was a focal point for terrorist recruiting.

The bombing of the Dar al-Farooq Islamic Center was in, and affected, interstate commerce; was committed by means of fire and explosive; involved the use of force; and

Defendant, Hari, and McWhorter carried and used a destructive device (the pipe bomb) during and in relation to the bombing of the Dar al-Farooq Islamic Center.

Beginning no later than October of 2017, Defendant, together with Hari and McWhorter, possessed two machine guns in the Central District of Illinois. These weapons had been illegally converted to fire in "full automatic" mode, a mode of firing in which the gun fires rapidly for as long as the trigger is held down, and the ammunition supply lasts.

On or about November 7, 2017, Defendant and Hari attempted to set on fire the Women's Health Practice in Champaign, in the Central District of Illinois. The Women's Health Practice offered a variety of medical services, including abortions. Defendant broke a window, placed an incendiary device in the Women's Health Practice, and lit a strip of magnesium that was being used as a fuse; however, the device did not ignite. Defendant concedes that the government has sufficient evidence to prove beyond a reasonable doubt that law enforcement responded to the Women's Health Practice when a receptionist, arriving to open the Women's Health Practice on the morning of November 7, 2017, found the unexploded device on the floor. Law enforcement determined the device to be a length of PVC pipe, capped at one end, and covered in duct tape at the other end, containing an incendiary powder mixture, one of whose components was thermite. The device also contained a fuse, which was a strip of magnesium metal, which could be used to ignite the incendiary mixture. When thermite is ignited by heat, it creates brief bursts of heat and high temperature. Hari constructed the incendiary device and rented a truck in which the defendants traveled to the Women's Health Practice.

Defendant concedes that the government has sufficient evidence to prove beyond a reasonable doubt that the Women's Health Practice used its building in Champaign, Illinois in interstate commerce; that medical services were provided at the location; that the Women's Health Practice purchased and disbursed medical supplies, some of which had moved in interstate and foreign commerce, at that building; that at that building, the Women's Health Practice also processed health insurance payments for the medical services provided by the Women's Health Practice; and that many of those payments came from health insurance carriers located outside Illinois.

On or about December 16, 2017, Defendant, together with Hari and McWhorter, as well as four other people, participated in a home invasion in the town of Ambia, Indiana. The three defendants, and one other person, carried firearms, two of which had been illegally converted to machine guns. The three conspirators, and one other person, masqueraded as police officers, and robbed the inhabitants of the house. In order to reach Ambia, Indiana from central Illinois, the three defendants, and four other people, crossed the Illinois – Indiana state line, and this robbery therefore took place in, and affected, interstate commerce. Defendant admits that this robbery was in, and affected, interstate commerce. Some of the victims of the Ambia robbery were physically restrained during the commission of the robbery. The defendants obtained no money from this home invasion.

Defendant, together with McWhorter and Hari, as well as others, also perpetrated armed robberies of two Wal-Mart stores, one in Watseka, Illinois, on or about December 4, 2017, and one in Mt. Vernon, Illinois, on or about December 17, 2017. Wal-Mart is a

large corporation that does business in all fifty states, and many foreign countries. Defendant admits and acknowledges that these two armed robberies were of a company that is in, and affects, interstate and foreign commerce. The conspirators obtained approximately $1,047 from the Watseka robbery, and no money from the Mt. Vernon robbery. During the perpetration of the Watseka robbery, the defendants carried fake firearms.

On or about January 17, 2018, Defendant, together with Hari and McWhorter, sabotaged a portion of railroad track used by the Canadian National Railway, outside the town of Effingham, Illinois. Hari then sent a communication to the Canadian National Railway, by placing a message on the Canadian National Railway's online inquiry form. The communication stated that further sabotage directed at the Canadian National Railway would occur unless the Canadian National Railway paid the defendants an amount of a particular cryptocurrency equivalent to slightly more than $190,000. Before he participated in the sabotage of the railroad track, Defendant knew Hari was going to send the communication to the Canadian National Railway. Defendant admits and acknowledges that the intent of Hari's communication was to extort money and funds from the Canadian National Railway. Defendant concedes that the government has evidence sufficient to prove beyond a reasonable doubt that the Canadian National Railway is headquartered in Montreal, Quebec, and transports freight throughout Canada and the United States. Defendant admits and acknowledges that the target of this extortion attempt, the Canadian National Railway, is in, and affects, interstate and foreign commerce. The

conspirators obtained no money from the Canadian National Railway as a result of this extortion attempt.

2. **Venue** Defendant admits and acknowledges that Counts 2 and 4 of the Minnesota Indictment were committed in the State and District of Minnesota, and that venue is proper in this Court. Defendant admits and acknowledges that Counts 1, 2, and 3 of the Illinois Indictment have been transferred from the Central District of Illinois to the District of Minnesota for guilty pleas and imposition of sentence pursuant to Federal Rule of Criminal Procedure 20. Defendant further admits and acknowledges that this Rule 20 transfer was validly and properly done, and further, was done at Defendant's request. Defendant hereby waives any and all objections he may have to the transfer of Counts 1, 2, and 3 of the Illinois Indictment from the Central District of Illinois to the District of Minnesota.

3. **Waiver of Pretrial Motions.** Defendant understands that he has certain rights to file pretrial motions in this case. As part of this plea agreement, and based upon the concessions of the United States in this plea agreement, Defendant knowingly, willingly, and voluntarily agrees not to file any pretrial motions.

4. **Statutory Maximum and Minimum Penalties.** The parties agree that Counts, 1, 2, and 3 of the Illinois Indictment are all Class C felonies, 18 U.S.C. § 3559(a)(3), and carry the following maximum statutory penalties and mandatory minimum penalty (for Count 3) upon conviction:

**Count 1 of the Illinois Indictment, Possession of a Machine Gun.**

    a. A maximum term of imprisonment of not more than 10 years, 18 U.S.C. § 924(a)(2);

    b. A maximum supervised release term of not more than three years, 18 U.S.C. § 3583(b)(2);

    c. A maximum fine of not more than $250,000, 18 U.S.C. § 3571(b)(3); and

    d. A mandatory special assessment of $100, 18 U.S.C. § 3013(a)(2)(A).

**Count 2 of the Illinois Indictment, Conspiracy to Interfere with Commerce by Threats and Violence.**

    a. A maximum term of imprisonment of not more than 20 years, 18 U.S.C. § 1951(a);

    b. A maximum supervised release term of not more than three years, 18 U.S.C. § 3583(b)(2);

    c. A maximum fine of not more than $250,000, 18 U.S.C. § 3571(b)(3); and

    d. A mandatory special assessment of $100, 18 U.S.C. § 3013(a)(2)(A).

**Count 3 of the Illinois Indictment, Attempted Arson.**

    a. A mandatory minimum term of imprisonment of not less than five years, 18 U.S.C. § 844(i);

    b. A maximum term of imprisonment of not more than 20 years;

    c. A maximum supervised release term of not more than three years, 18 U.S.C. § 3583(b)(2);

    d. A maximum fine of not more than $250,000, 18 U.S.C. § 3571(b)(3); and

    e. A mandatory special assessment of $100, 18 U.S.C. § 3013(a)(2)(A).

**Count 2 of the Minnesota Indictment, Obstructing the Free Exercise of Religion.**

The parties agree that Count 2 of the Minnesota Indictment is a Class C felony, 18 U.S.C. § 3559(a)(3), and carries the following maximum penalties upon conviction:

a. A maximum term of imprisonment of not more than 20 years, 18 U.S.C. § 247(d)(3);

b. A maximum supervised release term of not more than three years, 18 U.S.C. § 3583(b)(2);

c. A fine of up to $250,000, 18 U.S.C. § 3571(b)(3); and

d. A special assessment of $100, 18 U.S.C. § 3013(a)(2)(A).

**Count 4 of the Minnesota Indictment, Using a Destructive Device During the Commission of a Crime of Violence**

The parties agree that because the statutory maximum term of imprisonment for a violation of 18 U.S.C. § 924(c) is imprisonment for life, *United States v. Gamboa*, 439 F.3d 796, 811 (8th Cir. 2006), Count 4 of the Minnesota Indictment is a Class A felony, 18 U.S.C. § 3559(a)(1), and carries the following maximum penalties upon conviction:

a. A mandatory minimum term of imprisonment of not less than 30 years, 18 U.S.C. § 924(c)(1)(B)(ii);

b. A statutory maximum term of imprisonment for life;

c. A maximum fine of not more than $250,000, 18 U.S.C. § 3571(b)(3);

    d. A maximum supervised release term of not more than five years, 18 U.S.C. § 3583(b)(1); and

    e. A special assessment of $100, 18 U.S.C. § 3013(a)(2)(A).

The maximum punishment which could be imposed upon Defendant, should the Court sentence him to the maximum term of imprisonment on each count, and order that those sentences be served consecutively, would be imprisonment for life, and fines totaling $1,250,000.

    5.    **Revocation of Supervised Release.** Defendant understands that if he violates any condition of supervised release, he could be sentenced to an additional term of imprisonment of up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583, and with no credit for any time previously served on supervised release. For the Class C felonies to which Defendant is pleading guilty (Counts 1, 2, and 3 of the Illinois Indictment and Count 2 of the Minnesota Indictment), the maximum term of imprisonment to which Defendant could be sentenced for a violation of the terms and conditions of supervised release is two years. 18 U.S.C. § 3583(e)(3). For a violation of the terms and conditions of any term of supervised release imposed by the Court as part of the sentence for Count 4 of the Minnesota Indictment, which is a Class A felony, the maximum term of imprisonment to which Defendant could be sentenced is five years, 18 U.S.C. § 3583(e)(3).

    6.    **Guidelines Calculations.** The parties acknowledge that Defendant will be sentenced in accordance with 18 U.S.C. § 3551, et seq. Nothing in this plea agreement should be construed to limit either party from presenting to the Court at the time of

sentencing any and all evidence which they think relevant to the Court's determination of a just sentence. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence, and stipulate to the following advisory guidelines calculations:

### a. Base Offense Levels.

- The base offense level for Count 1 of the Illinois Indictment is 18 because the offense involved "a firearm described in 18 U.S.C. § 5845(a)." United States Sentencing Guidelines (hereinafter "U.S.S.G.") § 2K2.1(a)(5). This offense level is increased by four because the machine gun was possessed in connection with the commission of another felony, namely the armed robbery at Ambia, Illinois. U.S.S.G. § 2K2.1(b)(6)(B). The offense level is increased by a further two levels because the defendants possessed at least three firearms, U.S.S.G. § 2K2.1(b)(1)(A). The adjusted offense level for Count 1 of the Illinois Indictment is $18 + 4 + 2 = 24$.
- The base offense level for Count 2 of the Illinois Indictment is calculated by analyzing the overall conspiracy into four separate conspiracies to commit each of the three armed robberies and one extortionate act by which the overall conspiracy was carried out, U.S.S.G. § 1B1.2(d) and Application Note 3.
- **The Ambia armed robbery**
    o The base offense level for the Ambia armed robbery is 20, U.S.S.G. § 2B3.1
    o Five levels are added because a firearm was possessed, U.S.S.G. § 2B3.1(b)(2)(C);
    o Two levels are added because the victims were physically restrained, U.S.S.G. § 2B3.1(b)(4)(B); and
    o The adjusted offense level for the Ambia armed robbery is $20 + 5 + 2 = 27$
- **The Mt. Vernon Wal-Mart armed robbery**
    o The base offense level for the armed robbery of the Mt. Vernon Wal-Mart is 20, U.S.S.G. § 2B3.1;
    o No adjustments to the base offense level apply.
    o The adjusted offense level for the Mt. Vernon Wal-Mart armed robbery is 20.
- **The Watseka Wal-Mart armed robbery**
    o The base offense level for the armed robbery of the Watseka Wal-Mart is 20, U.S.S.G. § 2B3.1;

- - o Three levels are added because a dangerous weapon (the fake gun – Application Note 1(E)(ii)(I) to U.S.S.G. § 1B1.1) was possessed, U.S.S.G. § 2B3.1(b)(2)(C).
    - o The adjusted offense level for the Watseka Wal-Mart armed robbery is 20 + 3 = 23.
  - **Attempted Extortion from the Canadian National Railway**
    - o The base offense level for the attempted extortion from the Canadian National Railway is 18, U.S.S.G. § 2B3.2;
    - o Two levels are added because the amount of money demanded was more than $95,000, but less than $500,000, U.S.S.G. §§ 2B3.2(b)(2) and 2B3.1(b)(7)(C) and (D).
    - o The adjusted offense level for the attempted extortion from the Canadian National Railway is 18 + 2 = 20.

- The base offense level for Count 3 of the Illinois Indictment is 24, because the Women's Health Practice was a "place of public use," U.S.S.G. § 2K1.4(a)(1).
- The base offense level for Count 2 of the Minnesota Indictment is 24, both because the bombing of the Dar al-Farooq Islamic Center created a substantial risk of death or serious bodily injury to a person other than a participant in the offense, and because the Dar al-Farooq Islamic Center was a "place of public use." U.S.S.G. § 2K1.4(a)(1).  To this, three levels are added because the bombing of the Dar al-Farooq Islamic Center was a hate crime, in that the Dar al-Farooq Islamic Center was chosen for bombing because it was a Muslim house of worship, U.S.S.G. § 3A1.3.  The adjusted offense level for Count 2 of the Minnesota Indictment is 24 + 3 = 27.
- There is no Guidelines base offense level for Count 4 of the Minnesota Indictment; rather, the Guidelines Sentence is the statutory mandatory minimum sentence of imprisonment of not less than thirty years.  U.S.S.G. § 2K2.4(b).  Neither Chapter Three nor Chapter Four of the U.S. Sentencing Guidelines are applicable to Count 4 of the Minnesota Indictment. *Id.*

b. **Grouping of Counts of Conviction.**

- The primary victim of Count 1 of the Illinois Indictment is society at large; the primary victims of Count 2 of the Illinois Indictment are (i) the Canadian National Railway, which was the victim of an extortionate act by which the conspiracy to interfere with commerce was carried out, as well as (ii) the victims of the various armed robberies (Ambia, Indiana; the Mt. Vernon Wal-Mart; and the Watseka Wal-Mart) by which the conspiracy to interfere with commerce was carried out; the primary victim of Count 3 of the Illinois Indictment is the Women's Health Practice; and the primary victim of Counts 2 and 4 of the Minnesota Indictment is the Dar al-Farooq Islamic Center and its congregants.  Because none of the counts to which Defendant is pleading guilty have a primary

victim in common, the counts of conviction do not group pursuant to U.S.S.G. § 3D1.2(b).
- Count 1 of the Illinois Indictment groups with the Ambia armed robbery pursuant to U.S.S.G. § 3D1.2(c), because the robbery guideline, U.S.S.G. § 2B3.1, contains an increase for possession, use, brandishing, etc. of a firearm, U.S.S.G. § 2B3.1(b)(2), while the firearms guideline contains an enhancement for use of a firearm in the commission of another felony offense, U.S.S.G. § 2K2.1(b)(6)(B).
- Count 4 of the Minnesota Indictment does not group with any other count, U.S.S.G. § 3D1.1(b)(1). The sentence for Count 4 of the Minnesota Indictment is consecutive to the sentence calculated for the remaining counts, 18 U.S.C. § 924(c)(1)(D)(ii). The overall sentence for the counts other than Count 4 of the Minnesota Indictment is determined using the grouping rules of Part 3D of the Sentencing Guidelines.

c. **Guidelines Methodology.** The advisory Guidelines sentence for all counts of conviction is calculated by (a) determining the sentence for the most serious count of conviction, and then (b) using the rules found at U.S.S.G. Section 3D, calculating the additional punishment attributable to Defendant's criminal behavior over and above the criminal behavior encompassed by that most serious count. U.S.S.G., Introductory Commentary to Part 3D ("The most serious offense is used as a starting point. The other counts determine how much to increase the offense level.")

d. **Identification of the Most Serious Offense** The most serious offenses, other than Count 4 of the Minnesota Indictment, to which Defendant is pleading guilty, are the Ambia armed robbery, and Obstruction of the Free Exercise of Religious Beliefs, both of which have an adjusted offense level of 27. Obstruction of the Free Exercise of Religious Beliefs is used as the most serious offense for purposes of guideline calculation.

e. **Calculation of the Overall Guidelines Sentence.** To the offense level 27 for the Dar al-Farooq bombing, four levels are added, because, under the guidelines' grouping rules at U.S.S.G. § 3D1.4, one unit is assigned for the Dar al-Farooq bombing itself, to which is added one unit for the Ambia armed robbery, one unit for the attempted arson of the Women's Health Practice, one unit for the Watseka armed robbery, one-half unit for the Mt. Vernon armed robbery, and one half unit for the Effingham attempted extortion, for a total of five units, which corresponds to a four level increase in adjusted offense level. U.S.S.G. § 3D1.4. The overall adjusted offense level for all crimes other than Count 4 of the Minnesota Indictment is therefore 27 + 4 = 31.

f.  **No Other Chapter Three Adjustments.** The government does not consider any other Chapter Three adjustments (other than acceptance of responsibility, discussed in the immediately following subparagraph) to be applicable in this case.

g.  **Acceptance of Responsibility.** The government agrees to recommend that Defendant be granted a three level reduction for acceptance of responsibility and to make any appropriate motions to the Court needed to effectuate that reduction. However, Defendant understands and agrees that this recommendation is conditioned upon the following: (i) Defendant testifies truthfully during the change of plea and sentencing hearings, (ii) Defendant provides complete and truthful information to the Probation Office in the process of preparing the report of pre-sentence investigation, and (iii) Defendant commits no further acts inconsistent with acceptance of responsibility. U.S.S.G. §3E1.1.

h.  **Adjusted Offense Level.** The adjusted offense level, before acceptance of responsibility, is 31. The adjusted offense level after acceptance of responsibility is $31 - 3 = 28$.

i.  **Criminal History.** Based on information available at this time, the parties believe Defendant's criminal history category is I. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. Defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing.

j.  **Guidelines Imprisonment Range.** If the offense level is 28, and the criminal history category is I, the Sentencing Guidelines imprisonment range is 78 to 97 months' imprisonment.

k.  **Total Guidelines Sentence of Imprisonment.** The total advisory guidelines sentence of imprisonment is the guidelines range set forth at subparagraph "j" above, plus the 360 month (30 year) guidelines sentence of imprisonment for Count 4 of the Minnesota Indictment. Because the 30-year mandatory minimum on Count 4 of the Minnesota Indictment may not be concurrent with any other term of imprisonment, the five-year mandatory minimum for Count 3 of the Illinois Indictment must be added to the 30-year mandatory minimum term of imprisonment for Count 4 of the Minnesota Indictment. In all other respects, however, Count 3 of the Illinois Indictment groups as described above. The total guidelines imprisonment range is 438 – 457 months. The total mandatory minimum term of imprisonment is $30 + 5$ years $= 35$ years $= 420$ months.

 **l. Guidelines Fine Range.** If the adjusted offense level is 28, the Sentencing Guidelines fine range is $25,000 to $250,000, U.S.S.G. § 5E1.2(c)(3)).

 **m. Guidelines Supervised Release Range.** For a Class A felony, the Sentencing Guidelines advise a term of supervised release of at least two years, but not more than five years, U.S.S.G.§ 5D1.2(a)(1). For Class C felonies, the Sentencing Guidelines advise a term of supervised release of at least one year, but not more than three years, U.S.S.G. § 5D1.2(a)(2).

 7. **Discretion of the Court.** The foregoing stipulations are binding on the parties, but they do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. Neither party may withdraw from this agreement should the Court determine that the applicable Guidelines calculations or Defendant's criminal history category are different from that stated above. Defendant will be sentenced pursuant to the Court's determinations.

 Both parties are free to argue to the Court for the sentence they believe to be just and appropriate, and to make such motions for variance and/or departure as will result in the sentence they believe to be just and appropriate.

 8. **Special Assessment.** The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which Defendant is convicted. U.S.S.G. § 5E1.3. Defendant agrees that his special assessment of $500 becomes due and payable at sentencing.

9. **Restitution.** Defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies to his offenses of conviction, and that the sentencing court will be required to order Defendant to pay restitution to the victims of his crimes.

10. **Waiver of Appeal and Collateral Attack.** Defendant understands that 18 U.S.C. § 3742 affords Defendant the right to appeal the sentence imposed in this case. Acknowledging this right, and in exchange for the concessions made by the United States in this plea agreement, Defendant hereby waives any rights conferred by 18 U.S.C. § 3742 to appeal Defendant's sentence on any ground. Because the United States recognizes that the sentencing guidelines calculations in this case are complicated, the United States agrees not to seek to enforce this appeal waiver to the extent the defendant's grounds for appeal are an alleged miscalculation of the sentencing guidelines by the Court. In addition, Defendant expressly waives the right to petition under 28 U.S.C. § 2255. The United States also waives its right to seek appellate review of any sentence imposed by the Court on any ground set forth in 18 U.S.C. § 3742. In addition, the waivers by Defendant noted above shall not apply to a direct appeal or post-conviction collateral attack based on a claim of ineffective assistance of counsel. Defendant has discussed these rights with his attorney. Defendant understands the rights being waived, and he waives these rights knowingly, intelligently, and voluntarily.

11. **Forfeiture.** Defendant agrees that he will forfeit to the United States any right, title, and interest he may have in any firearms used in the commission of the offenses to which he is pleading guilty, including, but not limited to, the following firearms:

 **a.** A .223/5.56 caliber AR-style platform rifle with no serial number;

 **b.** A .223 caliber AR-style platform rifle with a short-barrel and no serial number;

 **c.** A .223/5.56 caliber AR-style platform rifle with a mini-barrel and no serial number;

 **d.** An M16 AR-style platform rifle with no serial number;

 **e.** A Remington 11-87 Super Mag, camouflage, 12 gauge shotgun, serial number SM039535;

 **f.** An Ithaca Gun Company, Deerslayer 12 gauge shotgun, Model 37 Feather Lite, serial number 862123, and all the ammunition in that weapon;

 **g.** A Stoeger P3000 12 gauge shotgun, serial number 1640756, and all the ammunition in that weapon;

 **h.** A Mossberg 12 gauge shotgun, Model 88 Maverick, serial number MV7319X; and

 **i.** All ammunition contained in, or seized together with, these weapons.

Defendant agrees that the United States may forfeit these weapons and ammunition through civil, criminal, or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, abandons any interest he may have in these weapons and ammunition, and consents to their destruction.

Defendant understands that once his pleas of guilty are accepted by the Court, his felony convictions will bar him from possessing firearms and ammunition. Defendant

understands that he must legally divest himself of any firearms and ammunition in his possession that have not been forfeited to the United States by the terms of this plea agreement.

12. **Complete Agreement.** This plea agreement and sentencing stipulations, together with any agreement signed by the Parties before the entry of a plea, is the entire agreement and understanding between the United States and Defendant. There are no other agreements, promises, representations, or understandings.

Date: 1/24/19

ERICA H. MacDONALD
United States Attorney

BY: JOHN DOCHERTY
JULIE E. ALLYN
Assistant United States Attorneys

Date: 1/24/19

JOE MORRIS
Defendant

Date: 1/24/19

ROBERT RICHMAN, Esq.
Counsel for Mr. Morris